# Supreme Court of Florida

---

No. SC2020-0529

---

**THE FLORIDA BAR,**
Complainant,

vs.

**CHRISTOPHER W. CROWLEY,**
Respondent.

July 9, 2026

GROSSHANS, J.

The Rules Regulating The Florida Bar restrict what lawyers may say about certain candidates running for elected office, including those in nonpartisan judicial races and those seeking partisan positions. *See* R. Regulating Fla. Bar 4-8.2. The Florida Bar alleged that Christopher W. Crowley violated this rule when he criticized a fellow candidate vying for the position of state attorney. Agreeing with the Bar's position, the referee recommends that we find Crowley's speech to be in violation of the rule and suspend him from the practice of law for sixty days. Crowley challenges those

recommendations, arguing that his speech is protected under the First Amendment to the United States Constitution. We agree with Crowley and hold that under existing United States Supreme Court precedent the application of rule 4-8.2(a) to the particular speech at issue in this case is unconstitutional.[1]

I

In 2017, Crowley ran for the Office of State Attorney in the Twentieth Judicial Circuit. Also running for this post was then-Chief Assistant State Attorney Amira Fox. During the course of the campaign, Crowley made numerous remarks about Fox's qualifications and integrity that the Bar alleges are in violation of its rules.

For example, Crowley claimed that Fox had a low conviction rate and attributed to Fox the failure of the State Attorney's Office to obtain convictions in two cases. He also accused Fox of improperly interfering with a grand jury.

In another set of remarks, Crowley alleged that Fox was involved in the decision to arrest him for campaign-related

---

1. We have jurisdiction. *See* art. V, § 15, Fla. Const.

misconduct. Leading up to the election, Crowley was arrested after being charged with two felonies relating to improper conduct at a campaign event.[2] In response, Crowley accused Fox of orchestrating his arrest. He reiterated these allegations numerous times.[3] Crowley also accused Fox of having ties to a pro-Palestinian organization.

When these statements, and others, came to the Bar's attention, it filed a complaint against Crowley, alleging that he violated rules 4-8.2(a) (forbidding improper impugning of a candidate for election to legal office), 4-8.4(a) (prohibiting conduct that violates the rules of professional conduct), and 4-8.4(d) (prohibiting conduct prejudicial to the administration of justice).[4]

---

2. Although the initial complaint about Crowley's behavior was filed in the Twentieth Judicial Circuit, the governor transferred the investigation to the Tenth Judicial Circuit, which is the circuit that eventually charged Crowley.

3. Crowley later admitted his conduct at the campaign event was unlawful.

4. The complaint included a second charge based on an unrelated interaction between Crowley, an assistant state attorney, and the assistant state attorney's supervisor. The referee recommended that Crowley be found not guilty on this count, and the Bar does not seek review of the recommendation. We do not discuss this charge further.

According to the Bar, Crowley violated rule 4-8.2(a) because he made the above statements either knowing they were false or with reckless disregard as to their truth, and the statements concerned Fox's qualifications or integrity.

The referee held an evidentiary hearing on the Bar's charges, at which the Bar called several witnesses and introduced documentary evidence. Upon consideration of the evidence and the parties' arguments, the referee recommended that Crowley be adjudicated guilty for violating rules 4-8.2(a) and 3-4.3.[5] Notably, the referee found proof that Crowley made the statements with the requisite mental state and that the subject of the statements was Fox's qualifications or integrity. However, the referee recommended that Crowley not be found guilty of violating rule 4-8.4(a) or 4-8.4(d). As a penalty for violating rules 4-8.2(a) and 3-4.3, the referee recommended a sixty-day suspension.

---

[5]. Rule 3-4.3 states in pertinent part that "[t]he commission by a lawyer of any act that is unlawful or contrary to honesty and justice may constitute a cause for discipline whether the act is committed in the course of the lawyer's relations as a lawyer or otherwise." R. Regulating Fla. Bar 3-4.3. Although not initially charged by the Bar, this rule was raised in the course of the proceeding.

Before this Court, Crowley and the Bar both challenge aspects of the referee's report. Crowley claims that the referee erred in its recommendation as to rules 4-8.2(a) and 3-4.3, and the Bar challenges the recommendation as to both subdivisions of rule 4-8.4. We first address Crowley's challenge.

II

Crowley's chief argument is that the referee's recommendations related to rule 4-8.2(a) cannot be sustained, even if supported by competent, substantial evidence.[6] This is so, Crowley tells us, because disciplining him for his challenged statements would abridge his First Amendment right to engage in political speech during an election campaign.[7] We agree.

Before examining relevant background principles, we discuss the specific rule at issue, which reads as follows:

> A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its

---

6. Crowley does not deny making the allegations in question or dispute that the statements were directed at Fox's qualifications or integrity.

7. The parties have not presented argument about the scope and meaning of article I, section 4 of the Florida Constitution. Accordingly, our discussion is limited to the First Amendment to the U.S. Constitution.

truth or falsity concerning the qualifications or integrity of a judge, mediator, arbitrator, adjudicatory officer, public legal officer, juror or member of the venire, or candidate for election or appointment to judicial or legal office.

R. Regulating Fla. Bar 4-8.2(a).

Several observations are readily apparent from the text of the rule. One, the rule applies to "statements"—something that, as conceded by the Bar, qualifies as speech under the First Amendment. Two, the rule's application depends on what the lawyer says, making it a content-based restriction. For example, the rule does not apply if a lawyer comments on something other than the "qualifications or integrity" of certain officers or candidates. And three, in certain situations (as in this case), the rule restricts speech by lawyers about those holding or running for political, partisan offices. With these preliminary observations in mind, we now consider Crowley's as-applied constitutional challenge.

A

The First Amendment prohibits government action that "abridg[es] the freedom of speech." Amend. I, U.S. Const.; *see also Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 470 (2025) (noting

- 6 -

that the First Amendment "applies to the States through the Fourteenth Amendment").

Because sovereignty resides with the people, the First Amendment safeguards against the government's exercise of "censorial power." 4 Annals of Congress 934 (1794) (Statement of James Madison) (noting that in a republican form of government, "the censorial power is in the people over the Government, and not in the Government over the people"). Moreover, the First Amendment's free speech guarantee provides the people, as sovereigns, with an avenue to secure every other retained right. *See* James Madison, Virginia Resolutions of 1798 in 4 Debates in the Several State Conventions 529 (Jonathan Elliot ed. 1863) (describing the "right of freely examining public characters and measures, and of free communication among the people thereon," as "the only effectual guardian of every other right").

Consistent with these views, "speech about public issues and the qualifications of candidates for elected office commands the highest level of First Amendment protection." *Williams-Yulee v. Fla. Bar,* 575 U.S. 433, 443 (2015) (citing *Eu v. S.F. Cnty. Democratic Cent. Comm.,* 489 U.S. 214, 223 (1989)); *see also Citizens United v.*

*Fed. Election Comm'n*, 558 U.S. 310, 339 (2010) ("The First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office." (internal quotation marks omitted) (quoting *Eu*, 489 U.S. at 223)); *Fed. Election Comm'n v. Colo. Republican Fed. Campaign Comm.*, 533 U.S. 431, 465-66 (2001) (Thomas, J., dissenting) ("Political speech is the primary object of First Amendment protection, and it is the lifeblood of a self-governing people." (citations and internal quotation marks omitted)); *Roth v. United States*, 354 U.S. 476, 484 (1957) (emphasizing that freedom of expression not only advances the truth but allows people to share their sentiments on government and inspire change, "whereby oppressive officers are shamed or intimidated, into more honourable and just modes of conducting affairs" (quoting 1 Journals of the Continental Congress 108 (1774))).  Indeed, James Madison acknowledged that the freedom of political speech in particular is "indispensable" to the exercise of voting rights.  James Madison, Report on the Virginia Resolutions in 4 Debates in the Several State Conventions 574 (Jonathan Elliot

ed. 1863).[8]  Accordingly, the First Amendment operates, in part, "to protect the free discussion of governmental affairs," which "includes discussions of candidates . . . and all such matters relating to political processes."  *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966).

Nevertheless, we acknowledge that the First Amendment does not guarantee an absolute right of expression.  *Cf. Virginia v. Black*, 538 U.S. 343, 358 (2003) ("The protections afforded by the First Amendment, however, are not absolute . . . ."); 3 Joseph Story, Commentaries on the Constitution of the United States § 1874 (1833) (noting that the First Amendment does not secure "an absolute right to speak, or write, or print").  But for protected speech (as is the case here), the First Amendment demands that government restrictions satisfy a high level of judicial scrutiny.  *See Chiles v. Salazar*, 146 S. Ct. 1010, 1021-23 (2026).

---

8.  Madison further elaborated that "[t]he value and efficacy of" the right to vote "depends on the knowledge of the comparative merits and demerits of the candidates for public trust, and on the equal freedom, consequently, of examining and discussing these merits and demerits of the candidates respectively."  *Id.* at 575.  He went so far as to contend that without the ability "to examine, to discuss, and to ascertain" the "characters" of those running for office, people would "[n]ot [be] free" but instead would "be compelled to make their election between competitors" in ignorance.  *Id.* at 576.

Consistent with these First Amendment principles, we recognize that laws, or rules like at issue here, imposing content-based restrictions on speech must withstand an exacting level of review. *Police Dep't of Chi. v. Mosley*, 408 U.S. 92, 95 (1972) ("[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." (citing *Cohen v. California*, 403 U.S. 15, 24 (1971))). This kind of law "target[s] speech based on its communicative content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *see also McCullen v. Coakley*, 573 U.S. 464, 479 (2014) (finding a law to be content based if one must "examine the content of the message that is conveyed to determine whether a violation has occurred" (internal quotation marks omitted) (quoting *Fed. Commc'ns Comm'n v. League of Women Voters of Cal.*, 468 U.S. 364, 383 (1984))).

"Content-based laws merit this protection because they present, albeit sometimes in a subtler form, the same dangers as laws that regulate speech based on viewpoint." *Reed*, 576 U.S. at 174 (Alito, J., concurring). That is, limits on speech "based on its

'topic' or 'subject' favors those who do not want to disturb the status quo," and such limits thereby "interfere with democratic self-government and the search for truth." *Id.* To protect such ends, content-based restrictions or regulations are subject to the highest level of scrutiny. *See id.* at 163 (majority opinion).

As noted above, the rule invoked by the Bar to punish Crowley's campaign speech is clearly content based.[9] Rule 4-8.2(a) subjects attorneys to discipline if they comment on the qualifications or integrity of a candidate for election to a legal office with knowledge that the comment is false or with reckless disregard

---

9. To the extent the Bar suggests that it can broadly regulate attorney speech because licensure is a conditional privilege, it is wrong. The First Amendment does not afford lesser protection simply because the speech is uttered by an attorney. *See Nat'l Inst. of Fam. & Life Advocs. v. Becerra,* 585 U.S. 755, 767 (2018) ("Speech is not unprotected merely because it is uttered by 'professionals.' "); *Chiles,* 146 S. Ct. at 1022 ("[T]he First Amendment's protections extend to licensed professionals much as they do to everyone else."). It is true that attorneys in this state promise to "maintain the respect due to courts of justice and judicial officers" and pledge "civility[] not only in court, but also in all written and oral communications." Oath of Admission to The Fla. Bar. However, the U.S. Supreme Court has made clear that "a State may not, under the guise of prohibiting professional misconduct, ignore constitutional rights." *Nat'l Ass'n for Advancement of Colored People v. Button,* 371 U.S. 415, 439 (1963) (citing *Schware v. Bd. of Bar Exam'rs of N.M.,* 353 U.S. 232 (1957)).

as to its truth. *See* R. Regulating Fla. Bar 4-8.2(a). Thus, the rule's application depends on whether the statement concerns the "qualifications" or "integrity" of certain office holders or candidates. *Id.* The Bar had to examine the content of Crowley's statements—whether they concerned Fox's qualifications or integrity—to determine whether to charge a violation of the rule. So we know this results in a content-based restriction of his speech.

C

We turn to whether the rule, on the specific facts presented here, may be constitutionally enforced against Crowley. The U.S. Supreme Court has established a framework for evaluating content-based speech restrictions under the First Amendment—namely, strict scrutiny. *See TikTok Inc. v. Garland*, 604 U.S. 56, 70 (2025). Under this demanding standard, such laws are presumptively unconstitutional and may be justified only if the government (here the Bar) proves "that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171 (quoting *Ariz. Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011)). That burden cannot be met here.

The Bar contends that it can sanction Crowley's speech

because it has a compelling interest in protecting the integrity of and maintaining public confidence in the judicial system. This interest, according to the Bar, is sufficient to permit speech regulations directed at state attorneys, a legal office that the Bar identifies as falling within the scope of this rule.

We agree that the Bar's interest in protecting the judicial system's integrity and maintaining public confidence in that system is, in some contexts, compelling. Indeed, because of this interest, an attorney's speech in ongoing litigation can be curtailed and punished. *See Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1071 (1991) ("It is unquestionable that in the courtroom itself, during a judicial proceeding, whatever right to 'free speech' an attorney has is extremely circumscribed."); *Fla. Bar v. Martocci*, 791 So. 2d 1074, 1075, 1078 (Fla. 2001) (punishing an attorney for making disparaging and profane remarks to humiliate the opposing party and her attorney in a divorce proceeding). And we accept the Bar's argument that this interest would be sufficiently compelling to justify certain restrictions on attorney speech that recklessly impugns the qualifications or integrity of sitting judges. *See Fla. Bar v. Girley*, 417 So. 3d 230, 238-39 (Fla. 2025); *In re Shimek*, 284

- 13 -

So. 2d 686, 689-90 (Fla. 1973).

But here, the Bar has not carried its burden to show that the rule's application in this context serves a compelling interest. A generalized concern with preserving public confidence in the judicial system is insufficient to justify restricting vigorous, open debate about the integrity and qualifications of candidates for this public office. This is true even where, as here, the speech is inaccurate, offensive, and misleading. *See Snyder v. Phelps*, 562 U.S. 443, 458 (2011) ("[I]n public debate [we] must tolerate insulting, and even outrageous, speech in order to provide adequate breathing space to the freedoms protected by the First Amendment." (internal quotation marks omitted) (second alteration in original) (quoting *Boos v. Barry*, 485 U.S. 312, 322 (1988))). And although the office of state attorney functions primarily within the judicial system, the actions of its candidates do not implicate the branch as a whole in the same manner as matters involving specific cases or judges.

Even assuming that the Bar correctly characterizes the office of state attorney as "quasi-judicial," our conclusion is the same. State attorney candidates are not seeking judicial office. Florida's

judicial elections are unique in their nonpartisan, apolitical nature. *See Williams-Yulee*, 575 U.S. at 445 ("Judges, charged with exercising strict neutrality and independence, cannot supplicate campaign donors without diminishing public confidence in judicial integrity."). It is well settled that judges are not politicians, and "a State's decision to elect its judiciary does not compel it to treat judicial candidates like campaigners for political office." *Id.* at 437-38. In contrast, the office of state attorney—like that of the public defender or attorney general—is a partisan position, markedly different from judicial office in both its responsibilities and its inherently political character.

Candidates for state attorney are permitted to affiliate with a political party, receive endorsements from a political party or partisan political organization, communicate their positions on a variety of politically charged issues, and solicit money directly from donors. The same cannot be said for candidates seeking judicial office, who are subject to very different regulations. *See* § 105.071, Fla. Stat. (2020) (prohibiting a judicial candidate from participating in a wide range of political activities); § 105.09, Fla. Stat. (2020) (prohibiting political parties and partisan political organizations

- 15 -

from endorsing a judicial candidate); Fla. Code Jud. Conduct, Canon 7A(1) (prohibiting political involvement by judicial candidates); Fla. Code Jud. Conduct, Canon 7C (prohibiting judicial candidates from soliciting funds, affiliating with political parties, and expressing positions on political issues). Thus, the rules regulating speech in judicial elections may be more restrictive than in other types of races, especially races of a political nature. *See Williams-Yulee*, 575 U.S. at 447 (acknowledging that "precedents applying the First Amendment to political elections have little bearing on the issues" presented by judicial elections).

Unlike judicial candidates, state attorney candidates are politicians campaigning in a partisan race. With that distinction in mind, the Bar has not identified a compelling interest sufficient to justify application of rule 4-8.2(a) to races for this "legal office."[10] Accordingly, we find the rule unconstitutional as applied to Crowley's political speech during his campaign for state attorney.[11]

---

10. For the reasons discussed above, we also conclude that the Bar has not identified a compelling interest sufficient to justify applying rule 3-4.3's broad language to political speech.

11. Because the Bar has not shown a compelling governmental interest, we decline to address its arguments that

- 16 -

We now address the Bar's cross-appeal.

## III

The Bar challenges the referee's no-guilt recommendations as to rules 4-8.4(a) and 4-8.4(d). We see no merit in these challenges.

Rule 4-8.4(d) prohibits a lawyer from engaging in "conduct in connection with the practice of law that is prejudicial to the administration of justice." We agree with the referee that Crowley's campaign activities and statements were not connected with the practice of law. *See State ex rel. Fla. Bar v. Sperry*, 140 So. 2d 587, 591 (Fla. 1962) (describing what constitutes the practice of law), *vacated on other grounds*, 373 U.S. 379 (1963).

As for rule 4-8.4(a), "that rule is necessarily violated whenever any other rule of professional conduct is violated." *Fla. Bar v. Letwin*, 70 So. 3d 578, 582 (Fla. 2011). Since we do not accept the referee's guilt recommendation regarding rule 4-8.2(a), Crowley cannot be guilty of violating rule 4-8.4(a).

For these reasons, we reject the Bar's challenges to the

---

rule 4-8.2(a) is narrowly tailored. *See Ariz. Free*, 564 U.S. at 748-50 (finding a restriction on political speech failed strict scrutiny after determining that a compelling interest did not exist); *Republican Party of Minn. v. White*, 536 U.S. 765, 777-78 (2002) (same).

referee's recommendation as to subdivisions (a) and (d) of rule 4-8.4.

IV

Because application of rules 4-8.2(a) and 3-4.3 to Crowley's campaign statements unconstitutionally infringes his First Amendment right to freedom of speech, we reject the referee's recommendation that Crowley be found guilty of and punished for violating these rules. We, however, accept the balance of the referee's recommendations.

It is so ordered.

COURIEL, C.J., and LABARGA, FRANCIS, and SASSO, JJ., concur.
MUÑIZ, J., concurs with an opinion, in which COURIEL, C.J., and LABARGA, J., concur.
TANENBAUM, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

MUÑIZ, J., concurring.

Crowley does not argue that rule 4-8.2(a), as this Court has interpreted it, applies to at least some of the statements underlying the complaint in this case. Nor does he ask us to revisit our precedents on the elements and application of the rule. Had Crowley put those issues in play, it is possible we could have

reached the same outcome without needing to resolve any First Amendment issue. At a minimum, this case should prompt our Court and the Bar to consider whether to amend the rule as a matter of good government and to account for evolving First Amendment jurisprudence. Nonetheless, given the parties' framing of the case, and taking our Court's precedents on rule 4-8.2(a) as we find them, I join the Court's opinion in full.

COURIEL, C.J., and LABARGA, J., concur.

Original Proceeding – The Florida Bar

Joshua E. Doyle, Executive Director, Patricia Ann Toro Savitz, Staff Counsel, and Mark Lugo Mason, Bar Counsel, The Florida Bar, Tallahassee, Florida,

    for Complainant

Christopher W. Crowley, Columbus, Georgia; and Scott K. Tozian of Smith, Tozian, Daniel & Davis, P.A., Tampa, Florida,

    for Respondent